UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LICENSED 2 THRILL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| RAKUTEN, INC., FREECAUSE, INC., CAUSELOYALTY, LLC, RAKUTEN USA, INC., and ONECAUSE LOYALTY, INC., | ) |
| Defendants. | ) |

## COMPLAINT

Licensed 2 Thrill, LLC, by its attorneys, alleges the following causes of action against Rakuten, Inc., FreeCause, Inc., CauseLoyalty, LLC and OneCause Loyalty Inc., and states as follows:

## PARTIES

1. Licensed 2 Thrill, LLC ("L2T") is a corporation and at all times relevant hereto had its principal place of business in Alpharetta, Georgia.

2. Rakuten, Inc., ("Rakuten") a publicly-traded Japanese corporation located in Tokyo, Japan, has a place of business in Boston, Massachusetts and operates numerous subsidiaries that are located in or do business in Massachusetts.

3. Rakuten USA, Inc. ("Rakuten USA") is wholly-owned subsidiary of Rakuten and is a Delaware corporation with a place of business in Cambridge, Massachusetts.

1

4. FreeCause, Inc., ("FreeCause") a wholly-owned subsidiary of Rakuten, is a Delaware corporation and has a place of business in Boston, Massachusetts.

5. OneCause, Inc. ("OneCause"), an Ohio corporation has a place of business in Cleveland, Ohio and Boston, Massachusetts and is also a wholly owned subsidiary of Rakuten.

6. CauseLoyalty, LLC ("CauseLoyalty"), a subsidiary of Rakuten, is a Georgia corporation with a place of business in Atlanta, Georgia and Boston, Massachusetts.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. All Defendants are related companies and operate in the affiliate marketing sector of online retailing. Affiliate marketing generally relates to internet searching and shopping wherein web search engines (such as Google, Yahoo, etc.) and online retailers (such as Sears.com, Home Depot.com, etc.) form affiliations with third parties to direct online consumers to certain websites. In the case of internet searching, an affiliate marketer would assist companies to direct online consumers to "click-on" on a sponsored internet link. If the affiliate marketer has a business relationship with Yahoo and that affiliate successfully directs an online consumer to click-on a sponsored link, then Yahoo would pay that affiliated marketer a commission. Likewise, if an online retailer such as Home Depot creates a relationship with an affiliate marketer and that affiliate marketers assists in driving internet traffic to Home Depot's website resulting in an eventual online sale, Home Depot would pay that affiliate marketer a commission. Affiliated marketers

typically operate a website that attracts online searchers and shoppers, and then directs the online consumers to various websites.

8. Rakuten is a company engaged in e-commerce. Rakuten operates several affiliate marketing businesses as well as networks that coordinate affiliate marketing businesses. Rakuten purchased FreeCause in 2009. Rakuten has more than 30 international subsidiaries with annual gross revenues in excess of $6 billion.

9. FreeCause is an affiliate marketing company with its main purpose to induce online consumers to engage in search and shop activities using a combination of FreeCause's toolbar and shopping mall interfaces provided by Rakuten. These activities generate commission and revenues from the sale of products and search engine advertisement and advertisement placement.

10. CauseLoyalty and OneCause are Rakuten-owned affiliate marketing companies that operate similar to FreeCause.

11. Plaintiff L2T is primarily engaged in business development, as well as sales and marketing opportunities, for its clients. In so doing, L2T builds customer relationships by using contacts to produce business opportunities, develop sales channels and assist in market planning and execution for its clients. L2T has developed significant access and high level contacts to large charities, companies, consumer brands and marketing professionals.

12. In 2008, FreeCause developed software associated with affiliated marketing, but did not have high level access to causes, organizations or brands to promote its software.

13. In or about September 2008, L2T was introduced to FreeCause, wherein FreeCause founders and other employees described its software to L2T's principals, explaining that if L2T could introduce FreeCause to L2T's business contacts, and these businesses contracted with FreeCause, then L2T would earn a commission based on subsequent revenues generated from those introductions.

14. On December 28, 2008, L2T and FreeCause entered into written agreement called the Referral Partner Program Agreement ("RPP Agreement"). The RPP Agreement stated the terms and conditions the parties initially agreed to in governing the L2T/FreeCause relationship. A true and correct copy of the RPP Agreement is attached hereto as Exhibit A.

15. The RPP Agreement stated that L2T was to receive compensation for introducing revenue-generating business contacts to FreeCause. In particular, L2T would introduce businesses to FreeCause and through such introductions, FreeCause would try to promote its software. If the introduction resulted in revenues to FreeCause, L2T was to receive a 10% commission based on gross revenues generated from those introductions.

16. In late 2008, L2T began working with FreeCause to set up meetings and introductions with L2T's business contacts.

## COUNT I: BREACH OF CONTRACT

17. At all times relevant hereto, the Referral Partner Program Agreement ("RPP Agreement") was a valid and enforceable contract.

18. At all times relevant hereto, L2T performed the obligations required under the RPP Agreement.

19. FreeCause breached its contract with L2T by, *inter alia*, not paying L2T the commissions due and owing L2T under the RPP Agreement.

20. L2T has not been privy to the gross revenue amount FreeCause has realized from the L2T introductions and was to pay L2T a 10% commission, thus, L2T is unaware of the amount L2T is due and owing.

21. Moreover, after executing the contract, L2T and FreeCause modified and ratified the modifications, though not in writing, but through the parties actions.

   a. According to the contract, when L2T identified and introduced FreeCause to a company, that company was referred to as a Prospective Lead.

   b. Following the identification of the Prospective Lead, the contract required L2T to prepare and submit to FreeCause a written Lead Activity Form describing the Prospective Lead.

   c. Thereafter, FreeCause would determine whether it would accept the Prospective Lead, and if so, the Prospective Lead would become a Qualified Lead and FreeCause would provide written notice of such acceptance.

   d. Soon after the RPP Agreement was signed, the parties began more informally interacting.

e. The parties modified the agreement by waiving the requirement of L2T supplying a written Lead Activity Form and FreeCause supplying its acceptance in writing.

f. FreeCause paid commissions on several leads proved by L2T which never went through the process of a Lead Activity Form or written notice of FreeCause's acceptance of the lead as a commission-paying lead.

g. Thus, through the parties' conduct and attendant circumstances, specifically the parties' intent to forego the formal notice process, the original contract was modified and ratified by the parties.

22. Moreover, FreeCause breached the implied covenant of good faith & fair dealing in its contract with L2T. In performing its obligations, FreeCause had a duty of good faith and fair dealing to develop the leads presented by L2T, i.e., enter into contracts with the leads, and to assist in creating revenues from these leads.

23. FreeCause failed to use good faith and fair dealing in its contract with L2T since it did not use reasonable efforts to adequately develop the introductions and leads presented to FreeCause by L2T.

24. FreeCause's conduct injured L2T by prohibiting L2T from receiving the full benefits of the terms of the contract which would have been L2T's full commissions it would have earned had FreeCause used good faith and fair dealing in fulfilling its obligations under the contract. Had FreeCause used reasonable efforts in fulfilling its obligations, the leads that L2T provided to FreeCause would have matured into

agreements between those leads and FreeCause, and, moreover, would have resulted in greater revenues and, thus, greater commissions to L2T.

25. As a direct result of FreeCause's breach of contract, that is, breach of the original written contract, the modified agreement and violation of the covenant of good faith and fair dealing, L2T suffered damages including, but not limited to, unpaid, commissions which should have materialized, loss of goodwill, and loss of prospective business advantage.

## CLAIM II: VIOLATION OF MASS. GEN. LAWS. CH. 93A, §2

26. L2T restates and realleges each and every paragraph 1-25 as if fully stated herein.

27. FreeCause violated Mass. Gen. Laws. ch. 93A, §2(a) by conducting unfair or deceptive acts or practices in its conduct with L2T. FreeCause knowingly made false statements of material fact to induce L2T to enter into the RPP Agreement and to fully perform those obligations. In particular, from September through December 2008, FreeCause misrepresented its relationships with national brands and the existence of real-time accounting procedures to calculate commissions involving its affiliate marketing business. Reliance on these and other FreeCause misrepresentations further recited in paragraphs 41-46, and by reference incorporated in this Court, caused L2T to contract and perform for FreeCause to L2T's disadvantage. FreeCause's conduct was unfair because FreeCause used bad faith and had no intention to use reasonable efforts in performing its obligations at time of contracting.

28. All of the foregoing FreeCause actions occurred in Massachusetts and were deceptive in that they caused L2T to use exceptional efforts to arrange meetings between L2T's clients and FreeCause when L2T would not have done so had it known FreeCause would not service the accounts, would not use reasonable efforts to contract with the accounts, and otherwise act in a way that was non-beneficial to L2T.

29. FreeCause knowingly breached the RPP Agreement to obtain unbargained-for benefits such as access to L2T's clients and email addresses associated therewith. This knowing breach occurred in Massachusetts.

30. FreeCause's dishonest conduct in carrying out the terms of the RPP Agreement was to L2T's detriment.

31. L2T was harmed, financially and by reputation, by FreeCause's unfair and deceptive actions.

### COUNT III: WILLFUL AND KNOWING VIOLATION OF MASS. GEN. LAWS. CH. 93A, §2E

32. L2T restates and realleges each and every paragraph 1-31 as if fully stated herein.

33. FreeCause willfully and knowingly violated Mass. Gen. Laws. ch. 93A, §2 because their actions were purposeful and not made by mistake. FreeCause knew it was acting unfairly, deceitfully and intentionally.

34. As a direct result of FreeCause's misconduct, L2T was injured.

## COUNT IV: TORTIOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONS

35. L2T restates and realleges each and every paragraph 1-34 as if fully stated herein.

36. L2T and FreeCause entered into a valid and enforceable RPP Agreement.

37. Rakuten, Rakuten USA, OneCause and CauseLoyalty all knew that L2T and FreeCause had entered into an RPP Agreement.

38. Rakuten, Rakuten USA, OneCause, and CauseLoyalty knowingly interfered with the RPP Agreement. Specifically, pursuant to the RPP Agreement, L2T was introducing its clients and contacts to FreeCause with the hopes of FreeCause selling its software to L2T's clients and contacts. Rakuten, Rakuten USA, OneCause, and CauseLoyalty interfered with the RPA Agreement by causing future software sales to L2T's clients and contacts to be made to leads provided by L2T through OneCause and CauseLoyalty, not through FreeCause. Thus, Rakuten, Inc. (the parent corporation) would still realize revenue from the software sales, but its subsidiary FreeCause did not have to pay a commission to L2T.

39. Similarly, L2T had an existing contract with Kinship Company, and FreeCause, Rakuten, Rakuten USA, OneCause, and CauseLoyalty knew of the contract. Nevertheless, the Defendants intentionally interfered with L2T and Kinship carrying out their obligations under the contract.

40. Rakuten's, Rakuten USA's, OneCause's, FreeCause's and CauseLoyalty's interference was intentional and improper in motive and/or means.

41. L2T was harmed by Rakuten's, Rakuten USA's, FreeCause's, OneCause's and CauseLoyalty's actions.

## COUNT V: FRAUDULENT MISREPRESENTATION

42. L2T restates and realleges each and every paragraph 1-41 as if fully stated herein.

43. On several occasions from September 2008 to November 2008, FreeCause employees, including but not limited to, Casey Adkisson, Mike Jaconi and others at FreeCause made verbal statements, showed pro forma statements[1] and/or engaged in meetings illustrating how much money L2T would make if L2T was able to introduce FreeCause to several of L2T's clients, including but not limited to Garfield, AZA, LA Zoo, and many other companies and organizations. FreeCause knew these material representations were false when they were made and FreeCause knew that L2T would rely on these misrepresentations, and L2T relied on the misrepresentations.

44. From September through November 2008, FreeCause's principals and vice president of sales, including but not limited to Justin Holland, Casey Adkisson, Matt Adkisson, Mike Jaconi, Brad Goldberg, and others at FreeCause represented to L2T that FreeCause would aggressively market the contacts L2T gave to FreeCause. These representations were material when they were made and they were made to induce L2T to introduce FreeCause to more contacts. These material representations were knowingly false when FreeCause made them, and they were falsely made by FreeCause to induce

---

[1] Examplars of the type of pro forma statements shown to L2T are attached as Exhibit B.

L2T to rely upon them. L2T relied upon the false representations believing them to be true, and as a result was damaged by its reliance on the misrepresentations.

45. In or around September November 2008, FreeCause's principals and members of their sales department, including but not limited to Justin Holland, Casey Adkisson, Matt Adkisson, Mike Jaconi, Brad Goldberg, and others at FreeCause represented to L2T that it had transparent and real-time accounting procedures to calculate commissions due from contacts made by L2T to FreeCause. These representations were material, and false, when FreeCause made them since FreeCause did not have real-time accounting procedures when it made these representations to L2T. FreeCause made these misrepresentations with the intent to induce L2T to rely upon them. L2T relied upon these misrepresentations and acted upon these misrepresentations to L2T's detriment by providing contacts and introductions to FreeCause.

46. From September through November 2008, FreeCause's principals and members of their sales department, including but not limited to Casey Adkisson, Matt Adkisson, Mike Jaconi, and others at FreeCause made representations and/or attended meetings at which such statements were made by other FreeCause employees regarding the status of its relationship with other entities such as non-profit Susan B. Komen Foundation ("Komen"). FreeCause represented that its relationship with Komen was strong and dependable and that L2T could use the FreeCause-Komen relationship as a selling point to L2T's clients and business contacts. These representations were material and false when FreeCause made them, and made with the intention of inducing L2T to

rely on the misrepresentations. L2T relied on these misrepresentations and was damaged by its reliance on FreeCause's misrepresentations.

47. Prior to contracting with L2T, in August and September 2008, FreeCause employees, including but not limited to Casey Adkisson, Matt Adkisson, Mike Jaconi, and others at FreeCause represented to L2T that it already had millions of toolbars downloaded. This representation was false when FreeCause made it and was made with the intent of inducing L2T to rely on the misrepresentation. L2T relied on the misrepresentation and was damaged by its reliance on FreeCause's misrepresentation.

48. Numerous times in 2010, FreeCause employees, including but not limited to Casey Adkisson, Matt Adkisson, Mark Rappaport, and others at FreeCause made misrepresentations regarding the status of monies due to L2T, ands on some of those occasions, represented there was no money due to L2T. These representations were material and false when they were made by FreeCause, and were made with the intention of inducing L2T to rely on the misrepresentations. L2T relied on these misrepresentations and was damaged financially and otherwise by its reliance on FreeCause's misrepresentations.

## CLAIM VI: AIDING AND ABETTING FRAUD

49. L2T restates and realleges each and every paragraph 1-48 as if fully stated herein.

50. At all times pertinent hereto with respect to the allegations contained in paragraphs 43-48, Rakuten knew FreeCause was committing some and all of the stated fraudulent acts. During August through December 2008 Rakuten was a 20% shareholder

of FreeCause, however FreeCause's principals frequently communicated with and visited Rakuten in Japan prior to its acquisition.

51. Rakuten actively participated in, substantially assisted and provided encouragement in the commission of the alleged fraudulent acts to L2T's detriment. Specifically, Rakuten knew that L2T was providing contact information and organizing introductions based on FreeCause's representations that L2T would earn commissions based on these introductions, yet despite this knowledge, Rakuten substantially assisted in diverting these contacts to other Rakuten companies, such as OneCause and CauseLoyalty, to avoid paying L2T any commissions earned on those accounts.

52. As a direct result of Rakuten's misconduct, L2T was injured.

### CLAIM VII: CIVIL CONSPIRACY

53. L2T restates and realleges each and every paragraph 1-52 as if fully stated herein.

54. FreeCause and Rakuten had a common design and an understanding to knowingly misrepresent material facts to L2T in order to obtain contact information from L2T and to use this information for Rakuten's, Rakuten USA's, FreeCause's, OneCause's and CauseLoyalty's benefit and to the detriment of L2T.

55. Rakuten, Rakuten USA, OneCause and CauseLoyalty had a common design and an understanding to knowingly interfere with L2T and FreeCause's RPP Agreement and to purposely, intentionally and with extreme malice divert to the said companies clients that L2T introduced to FreeCause.

56. L2T was damaged by Defendants' unlawful purpose and unlawful means of fraudulently misrepresenting facts to L2T for the purpose of inducing L2T to introduce FreeCause to L2T's business contacts and then unlawfully divert those same contacts to Rakuten's subsidiaries to avoid paying L2T the commissions it should have paid L2T. L2T suffered from loss of commissions, loss of goodwill, loss of prospective business advantage and other damages as a result of Defendants' unlawful acts which were performed using unlawful means.

## CLAIM VIII: UNJUST ENRICHMENT

57. L2T restates and realleges each and every paragraph 1-56 as if fully stated herein.

58. By providing dozens of introductions and contacts to Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty, a benefit was conferred upon the Defendants by L2T.

59. Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty had an appreciation of the benefit L2T conferred upon them.

60. As a direct result of Defendants' misconduct, L2T was injured.

61. Under the circumstances, Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty's acceptance of the said benefits without adequate compensation for its value to L2T would be inequitable.

## CLAIM IX: QUANTUM MERUIT

62. L2T alleges Claim IX in the alternative to Claims I - Claim VIII.

63. L2T restates and realleges each and every paragraph 1-61 as if fully stated herein.

64. L2T conferred a substantial benefit upon FreeCause.

65. Upon information and belief, FreeCause accepted L2T's services with the reasonable expectation of compensating L2T.

66. L2T provided the services with the reasonable expectation of receiving compensation from FreeCause.

67. As a direct result of FreeCause's misconduct, L2T was injured.

## **PRAYER FOR RELIEF**

WHEREAS, Plaintiff L2T, demands judgment against Defendants and entry of the following findings:

a. that FreeCause breached the Referral Partner Program Agreement with L2T;

b. FreeCause breached the implied covenant of good faith & fair dealing in its contract with L2T;

c. that FreeCause violated Mass. Gen. Laws. ch. 93A, §2(a) by conducting unfair or deceptive acts or practices in its conduct with L2T;

d. that FreeCause willfully and knowingly violated Mass. Gen. Laws. ch. 93A, §2 in its conduct with L2T;

e. that Rakuten, Rakuten USA, OneCause, and CauseLoyalty tortiously interfered with L2T's contractual relations with FreeCause;

f. that FreeCause is liable for fraudulent misrepresentation;

g. that Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty are liable for aiding and abetting FreeCause's fraudulent misrepresentation;

h. that FreeCause, Rakuten, Rakuten USA, OneCause and CauseLoyalty worked in concert to commit a tortious act against L2T;

i. that Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty have been unjustly enriched to L2T's detriment;

j. that L2T be entitled to quantum meruit award;

k. that FreeCause be ordered to account for and pay to L2T all amounts due and owing under the Referral Partner Program Agreement with L2T;

l. that Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty be ordered to account for and pay to L2T all the Defendant's profits they realized as a result of the contacts and introductions made by L2T;

m. that Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty be ordered to pay enhanced damages for their willful, wanton, and malicious conduct;

n. that Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty be ordered to pay to L2T its attorney fees;

o. that Rakuten, Rakuten USA, FreeCause, OneCause and CauseLoyalty be ordered to pay prejudgment interest on any compensatory awards; and

p. that the Court grant L2T such further relief as the Court deems just and equitable.

WHEREAS, Plaintiff L2T demands a trial by jury on all issues so triable.

                LICENSED 2 THRILL, LLC

                By: /s/ *Timothy H. White*
                Timothy H. White
                White and White P.C.
                549 Columbian St. Suite 301
                Weymouth, MA 02190
                (781) 331- 6900
                twhite@socialaw.com
                BBO#525800

Of counsel:
Grossman Law Offices
Mark M. Grossman, Esq.
Tina P. Fowler, Esq.
225 W. Washington St., #2200
Chicago, Il 60606
(312) 621-9000