UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LICENSED 2 THRILL, LLC, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 13-11257-DJC |
| RAKUTEN, INC., et al., | ) ) ) |  |
| Defendants. | ) ) ) |  |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                                  September 15, 2014

## I.    Introduction

Plaintiff Licensed 2 Thrill, LLC ("L2T") brings this lawsuit against Defendants Rakuten, Inc. ("Rakuten"), Rakuten USA, Inc. ("Rakuten USA") and FreeCause, Inc. ("FreeCause") asserting a number of claims arising from the parties' affiliate marketing agreement. D. 15. L2T has asserted claims for breach of contract against FreeCause (Count I); violation of Mass. Gen. L. c. 93A, § 2 against FreeCause (Counts II and III); tortious interference with contractual relations against Rakuten and Rakuten USA (Count IV); fraudulent misrepresentation against FreeCause (Count V); aiding and abetting fraud against Rakuten and Rakuten USA (Count VI); civil conspiracy against all Defendants (Count VII); unjust enrichment against all Defendants (Count VIII); and *quantum meruit* against FreeCause (Count IX). D. 15 at 7, 10–12, 15–17. Rakuten USA and FreeCause have moved to dismiss all counts of the amended complaint against

them.[1]  D. 19.  For the reasons discussed below, the Court ALLOWS IN PART and DENIES IN PART the motion to dismiss, D. 19.

## II. Factual Allegations

The facts recited here are as alleged in the amended complaint, D. 15.

Internet search engines and online retailers form affiliations with third parties to direct Internet customers to certain websites.  D. 15 ¶ 8.  Affiliate marketers assist companies, including search engines and online retailers, in directing online customers to click on sponsored links, thereafter earning a commission from such companies if consumers click on these sponsored links.  Id.

The Defendants are related companies that provide online affiliate marketing services.  Id.  Rakuten operates businesses and networks that coordinate affiliate marketing businesses.  Id. ¶ 9.  Rakuten USA, which purchased FreeCause in 2009, is a wholly owned subsidiary of Rakuten.  Id. ¶ 10.  FreeCause is an affiliate marketing company that "induce[s] online consumers to engage in search and shop activities," generating commission and revenues.  Id. ¶ 11.

In 2008, FreeCause developed a software that allows Internet users to opt into loyalty/affinity programs for popular brands and charities.  Id. ¶ 12.  Once the shopper downloads such software, FreeCause gains revenue from search engines and retailers affiliated with Rakuten-owned and operated affiliate marketers.  Id.  At the time this software was developed, FreeCause did not have "high level access to causes, organizations or brands to promote its software."  Id. ¶ 14.

---

[1] For purposes of this Memorandum and Order, the Court refers to FreeCause and Rakuten USA collectively as "Defendants."  The Court understands that the entity Rakuten, Inc. did not join the motion to dismiss.  See D. 20 at 3 n.2.

L2T is a company engaged in business development, sales and marketing. Id. ¶ 13. L2T "builds customer relationship by using contacts to produce business opportunities, develop sales channels and assist in market planning and execution for its clients," thus developing access to "high level" contacts at a number of organizations. Id. ¶ 15. On December 28, 2008, L2T and FreeCause entered into a Referral Partner Program Agreement ("RPP Agreement"). Id. ¶ 16. Under the RPP Agreement, L2T would introduce to FreeCause certain businesses and then FreeCause would promote its software to these businesses. Id. ¶ 17. If the introduction to a business resulted in FreeCause's software being downloaded (and thereby generating revenue for FreeCause), L2T would receive a ten percent commission from the gross revenues. Id. Under the terms of the RPP Agreement, such contacts were deemed "Prospective Leads," i.e., "third parties who may wish for [FreeCause] to provide them with FreeCause products." D. 15-1 at 3. The RPP Agreement also provided that after L2T identified a Prospective Lead, it would provide FreeCause with a completed "Lead Activity Form" describing the Prospective Lead. Id. After receiving the Lead Activity Form, the contract allowed FreeCause seven business days to "formally accept a lead" to be delivered to L2T "via U.S. mail, email or facsimile." Id. "If accepted by FreeCause, the Prospective Lead will then constitute a "Qualified Lead." Id. The contract provided that if FreeCause declined a Prospective Lead, it did not "have any obligation to [L2T] under this Agreement or Program, or otherwise with respect to such Prospective Lead." Id. The contract also provided that if a Prospective Lead had not previously entered into an agreement with FreeCause, had not previously been referred to or introduced to FreeCause by someone else, and FreeCause entered into an agreement with the Prospective Lead within sixty days of L2T's referral, the Prospective Lead would be considered a "User" and FreeCause would pay L2T a royalty per the terms of the RPP Agreement. Id.

L2T asserts that before and after entering into the RPP Agreement, principals from FreeCause represented to L2T that the company could expect to receive, on average, nearly thirty cents in commission per month for each computer user who downloaded the software. D. 15 ¶ 18.

In late 2008, L2T began introducing FreeCause to its business contacts. Id. ¶ 19. L2T asserts that several such leads became Qualified Leads and that L2T was to earn commissions for those leads. Id. ¶ 20. By late 2009, L2T alleges, it had introduced FreeCause to dozens of contacts, including CBS Sports, which signed a contract with FreeCause around 2008 or 2009. Id. ¶ 21. L2T alleges, upon information and belief, that within one year of the signing of such contract, "there were more than 160,000 FreeCause software downloads to accounts associated with CBS Sports." Id. L2T asserts that it should have received $48,000 per month in commissions as a result of the CBS Sports lead alone, totaling more than $500,000 to date. Id. ¶ 22. L2T alleges that FreeCause has paid only about $50,000 total for all of the contacts L2T provided to it. Id.

### III. Procedural History

L2T filed suit on May 23, 2013 against Rakuten, Rakuten USA, FreeCause, CauseLoyalty, LLC and OneCause Loyalty Inc. D. 1. FreeCause, CauseLoyalty, LLC and Rakuten USA moved to dismiss the original complaint. D. 10. L2T filed an amended complaint against only Rakuten, Rakuten USA and FreeCause on August 15, 2013, D. 15, which is the operative complaint in this case. Rakuten USA and FreeCause have now moved to dismiss all counts of the amended complaint. D. 19. After a motion hearing, the Court took this matter under advisement. D. 31.

**IV.	Standard of Review**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" to survive a motion to dismiss. Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss a complaint, the Court accepts "the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). To survive dismissal, a claim must be "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To determine plausibility, the Court must distinguish "the complaint's factual allegations (which must be accepted as true) . . . from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must then "determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

**V.	Discussion**

The Defendants have moved to dismiss the complaint on several grounds. The Court addresses each in turn.

### A.	The Statute of Frauds Does Not Bar L2T's Contract-Based Claims

The Defendants first argue that L2T's contract-based claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Mass. Gen. L. c. 93A, unjust enrichment and *quantum meruit* are barred by the Massachusetts Business Brokers Statute of Frauds, Mass. Gen. L. c. 259, § 7. D. 20 at 8, 11. The Defendants assert that L2T did not comply with the terms of the RPP Agreement and instead alleges that the parties modified the agreement such that L2T "would receive commissions for providing FreeCause with leads that

generated revenue even if Plaintiff didn't satisfy the Agreement's explicit conditions." Id. at 8. Specifically, the Defendants refer to L2T's allegations that "after executing the contract, L2T and FreeCause modified and ratified the modifications through the parties['] actions." Id. at 10 (citing D. 15 ¶ 27).

The Court concludes that L2T has sufficiently pleaded a breach of contract claim. To succeed on such claim, L2T must show the existence of a valid and binding agreement, FreeCause's breach of the agreement and L2T's damages suffered as a result of the breach. Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999). The parties do not dispute that the RPP Agreement is a valid and binding agreement. As to breach, L2T has alleged that it introduced FreeCause to CBS Sports and that Freecause and CBS Sports entered into a contract around the same time but that FreeCause did not make royalty payments to L2T for this lead. D. 15 ¶ 21–22. L2T has further alleged damages for such alleged breach. Id. ¶ 28.

The Court acknowledges that L2T has also alleged that shortly after the parties entered into the RPP Agreement, they began to "more informally interact[]," id. ¶ 27(d), and "modified the agreement by waiving the requirement of L2T supplying a written Lead Activity Form and FreeCause supplying its acceptance in writing." Id. ¶ 27(e). L2T alleges that FreeCause "paid commissions on several leads [provided] by L2T which never went through the process of a Lead Activity Form or written notice of FreeCause's acceptance of the lead as a commission-paying lead." Id. ¶ 27(f). L2T asserts that the parties intended to "forego the formal notice process" and thus, the "original contract was modified and ratified by the parties." Id. ¶ 27(g). The Massachusetts Business Brokers Statute of Frauds does provide that "[a]ny agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person

6

authorized." Mass. Gen L. c. 259, § 7. Even assuming that this statute is applicable to this case, however, the Court concludes that it does not provide grounds for dismissal of the contract claims at this juncture. Applying the Statute of Frauds generally, Massachusetts courts have held that "a party may not be made to comply with the terms of the amended contract unless [it] has signed a memorandum sufficiently indicating [its] assent thereto." Rex Lumber Co. v. Acton Block Co., Inc., 29 Mass. App. Ct. 510, 515 (1990). Thus, "a party may rely on the orally agreed-to amendments only as a defense to a claim for breach of the terms of the unamended contract." Id. (citing Johnston v. Holiday Inns, Inc., 565 F.2d 790, 793–96 (1st Cir. 1977)). Here, however, L2T has not sued FreeCause for its failure to abide by the terms of the contract's modification, but rather, for its alleged failure to comply with the terms of the RPP Agreement. Specifically, L2T has alleged that it introduced FreeCause to CBS Sports and that Freecause and CBS Sports entered into a contract around the same time; FreeCause, however, did not make royalty payments for this lead. D. 15 ¶ 21–22. L2T has, therefore, sued "on the written contract," i.e., FreeCause's obligation under the RPP Agreement to pay commissions for leads it accepts. Reading the complaint as a whole, a reasonable inference is that L2T alleges FreeCause shirked its obligations under the terms of the RPP Agreement and entered into a contract with CBS Sports without formally accepting the lead per the terms of the contract it had with L2T. L2T has thus pleaded as the basis of its breach of contract claim that L2T violated the RPP Agreement.

Further, L2T relies on the purported modifications to the agreement to "'show [its] own compliance with the contract terms.'" Croft v. Nat'l Bedding Co., No. 04-11487-RWZ, 2006 WL 1716754, at *2 (D. Mass. June 20, 2006) (quoting Rex Lumber, 29 Mass. App. Ct. at 515). That is, whether L2T complied with its end of the contract depends on whether the parties

7

modified the manner in which L2T was permitted to submit leads. Thus, to the extent the Defendants argue that L2T did not perform under the terms of the RPP Agreement by failing to submit Lead Activity Forms, such argument is a defense available to FreeCause and not a basis for dismissal at this juncture.

For these reasons, the Court DENIES the motion to dismiss the breach of contract claim. To the extent Defendants move to dismiss the fraud, c. 93A, unjust enrichment, *quantum meruit* and breach of the covenant of good faith and fair dealing on the grounds that "Plaintiff is seeking to enforce an unwritten promise to pay commissions for finder services," D. 20 at 11, the Court also DENIES such motion for the reasons discussed above.

### B. L2T Has Not Sufficiently Pleaded Tortious Interference With Contractual Relations

The Defendants further argue that the tortious interference claim against Rakuten USA should be dismissed because L2T has not properly pleaded an improper motive or means. D. 20 at 13. To the extent the Defendants argue that the complaint does not provide sufficient detail to satisfy Fed. R. Civ. P. 8(a), D. 20 at 14, the Court agrees.

To succeed on a tortious interference with contract claim, L2T must show that "(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) [L2T] was harmed by the defendant's actions." G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991); see Pierce v. Cotuit Fire Dist., 741 F.3d 295, 304 (1st Cir. 2014). The Defendants appear to argue that L2T's claim fails as to the second and third elements.

L2T has alleged that Rakuten USA knowingly interfered with the RPP Agreement by "causing future software sales to L2T's clients to be made to leads provided by L2T through

8

Rakuten and Rakuten USA's other subsidiaries, not through FreeCause." D. 15 ¶ 45. The facts pleaded, however, do not sufficiently state an improper motive or means. L2T alleges that Rakuten USA "fraudulently misrepresent[ed] facts to L2T for the purpose of inducing L2T to introduce FreeCause to L2T's business contacts." D. 15 ¶ 63. While fraud could constitute an improper motive or means, the allegations as pleaded do not sufficiently provide a factual basis that Rakuten USA made fraudulent misrepresentations. The Court cannot discern another basis of an improper motive or means from the facts alleged as against Rakuten USA, particularly given that a defendant's "legitimate advancement of its own economic interest" . . . is not 'improper' for purposes of a tortious interference claim." Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 39 (2004).

For these reasons, the Court ALLOWS the motion to dismiss Count IV.

### C. L2T Has Adequately Pleaded Its Fraud Claim Against FreeCause But Not Against Rakuten USA

#### 1. *Statute of Limitations*

The Defendants preliminarily argue that the fraud and aiding and abetting fraud claims should be dismissed because they were filed outside of the three-year statute of limitations. D. 20 at 15. The Court declines to dismiss the fraud claims on these grounds. The statute of limitations for torts under Massachusetts law is three years. Mass. Gen. L. c. 260, § 2A. For fraud claims, "a cause of action accrues at the time a plaintiff learns or reasonably should have learned of the misrepresentation." Kent v. Dupree, 13 Mass. App. Ct. 44, 47 (1982). To allow a motion to dismiss for an affirmative defense, such as a statute of limitations defense, "the facts establishing the defense must be clear on the face of the plaintiff's pleadings." Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (citations and quotations omitted). The complaint and the other documents appropriate for review on a motion to dismiss must

"leave no doubt that the plaintiff's action is barred by the asserted defense." Id. (citations and quotations omitted).

L2T filed its complaint on May 23, 2013. D. 1. The Court cannot conclude that the amended complaint clearly establishes that L2T knew or should have known prior to May 23, 2010 whether, as alleged, FreeCause was improperly withholding payments, particularly in light of the allegation that FreeCause was paying at least some commission to L2T through 2010. D. 15 ¶ 55. This issue is one to be resolved after discovery. Therefore, the Court will not dismiss the fraud claims based on the statute of limitations at this juncture.

　　　　2.　　　*Particularity*

The Defendants also argue that L2T has not pleaded its fraud claims with particularity. D. 20 at 15. The Court agrees with the Defendants, but only as to the aiding and abetting fraud claim against Rakuten USA.

Fed. R. Civ. P. 9(b) requires that for fraud claims, "the circumstances constituting fraud or mistake" be pleaded with particularity. That is, the complaint must describe the who, what, where and when of the alleged fraudulent statement. Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996); Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63, 68 (D. Mass. 2000). Therefore, for fraudulent misrepresentation, L2T must plead with particularity that the "defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon," Masingill v. EMC Corp., 449 Mass. 532, 540 (2007), and then must further show that the plaintiff relied upon the representation as true and acted upon it to its damage. Id.

The Court concludes that L2T has satisfied Fed. R. Civ. P. 9(b) in pleading fraudulent misrepresentation against FreeCause. L2T has alleged, for instance, that from September 2008

to November 2008, FreeCause employees, including Casey Adkisson and Mike Jaconi, falsely represented in meetings and through documentation the amount of money that L2T could earn if it introduced FreeCause to several clients, including Garfield, AZA and LA Zoo. D. 15 ¶ 50. L2T further alleges that during the same time period, FreeCause representatives, including Justin Holland, Casey Adkisson, Matt Adkisson, Mike Jaconi and Brad Goldberg, misrepresented that FreeCause would aggressively market the contacts L2T provided. D. 15 ¶ 51. L2T alleges that also in the same time frame, FreeCause representatives, including Justin Holland, Casey Adkisson, Matt Adkisson, Mike Jaconi and Brad Goldberg, misrepresented its accounting procedures used to calculate commissions. Id. ¶ 52. The complaint alleges that FreeCause knowingly made such misrepresentations to induce L2T to enter into the RPP Agreement and provide FreeCause with its contacts. Id. ¶¶ 50–52. While "Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter," N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009), a "general averment" of the knowledge element can suffice when the "complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)). Assuming L2T's assertions about the nature of FreeCause's alleged misrepresentations are true (as the Court must at this juncture), it is reasonable to believe that FreeCause representatives, including its principals, would be aware of the accounting procedures the company used regarding commissions and that FreeCause knowingly misrepresented what the commissions would be and how they would be calculated to induce L2T to enter into the RPP Agreement and subsequently provide FreeCause with its business contacts.[2]

---

[2]The Court need not reach the Defendants' argument that "promissory statements are not

The Court cannot so conclude, however, as to the aiding and abetting fraud claim brought against Rakuten USA. As Defendants note, D. 20 at 18, the complaint does not specify which Rakuten USA representative aided and abetted in FreeCause's purportedly fraudulent acts, when such aiding and abetting occurred or the nature of Rakuten USA's assistance or encouragement. See D. 15 ¶¶ 56–59.

For these reasons, the Court ALLOWS the motion to dismiss the fraud claims to the extent it seeks dismissal of the aiding and abetting fraud claim against Rakuten USA (Count VI), but DENIES the motion to the extent it seeks dismissal of the fraudulent misrepresentation claim against FreeCause (Count V).

### D. L2T Has Stated a Claim for Civil Conspiracy

Finally, the Defendants argue that L2T has not sufficiently pleaded civil conspiracy. D. 20 at 20. "Massachusetts recognizes two types of civil conspiracy, so-called 'true conspiracy' . . . and a form of vicarious liability for the tortious conduct of others." Taylor v. Am. Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009) (citing Kurker v. Hill, 44 Mass. App. Ct. 184 (1998)). While the Defendants argue that L2T "cannot satisfy the elements of either claim because . . . [L2T] has not pleaded its tort claims against FreeCause," D. 20 at 20, the Court concludes that L2T has sufficiently pleaded the second type of civil conspiracy, which requires "a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994); see also Bartle v. Berry, 80 Mass. App. Ct. 372, 383–84 (2011). As discussed above, L2T has sufficiently pleaded that

---

actionable as fraud," D. 20 at 18–19, as L2T has at least pleaded that FreeCause misrepresented the accounting procedures the company used to calculate commissions, D. 15 ¶ 52, which is not based on a promise.

FreeCause engaged in tortious conduct (i.e., fraudulent misrepresentation). While L2T did not state with particularity its basis for alleging its fraud-based claim against Rakuten USA, there is sufficient factual basis satisfying Fed. R. Civ. P. 8(a) that Rakuten USA acted in furtherance of an agreement between FreeCause and Rakuten USA to support FreeCause's allegedly tortious conduct. As discussed above, L2T has pleaded that the Defendants "misrepresent[ed] facts to L2T for the purpose of inducing L2T to introduce FreeCause to L2T's business contacts and then [] divert those same contacts to Rakuten's subsidiaries to avoid paying L2T the commissions it should have paid L2T." D. 15 ¶ 63. These allegations are sufficient to state a claim for civil conspiracy.

## VI. Conclusion

For the reasons discussed above, the Court ALLOWS IN PART the motion to dismiss, D. 19, to the extent that the aiding and abetting fraud claim against Rakuten USA (Count VI) and intentional interference with contractual relations claim against Rakuten USA (Count IV) are DISMISSED. To the extent the motion seeks any other relief, it is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge